# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED

AUG 0 8 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>One ALCATEL Phone, Model 5049Z<br>FCC ID: 2ACCJB089<br>IMEI: 014940001680462 | )<br>)<br>)<br>)<br>)<br>) | Case No.<br>**18MJ4366** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A-1.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841, and 846 | Possession with Intent to Distribute Methamphetamine, and Conspiracy |
| 21 U.S.C. 952, 960, 963 | Importation of Methamphetamine, and Conspiracy |

The application is based on these facts:
Please see Affidavit of Special Agent Victor Estebanes

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Victor Estebanes, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/8/18

_____
*Judge's signature*

City and state: San Diego, CA    The Honorable Jill L. Burkhardt, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Victor Estebanes, Special Agent ("SA"), Homeland Security Investigations ("HSI"), after being duly sworn, state:

# INTRODUCTION

1. I make this affidavit in support of an application for a search warrant for two phones, namely:

    a. One ALCATEL Phone
       Model 5049Z
       FCC ID: 2ACCJB089
       IMEI: 014940001680462

    **("Target Phone 1")**

    b. One SAMSUNG Phone
       Model SM-J727T
       FCC ID: A3LSMJ727T
       IMEI: 354804/09/164091/9

    **("Target Phone 2")**

further described in Attachments A-1 and A-2, respectively, and incorporated herein by reference. These phones were seized from Barbara Diane MONTES on or about March 13, 2018 pursuant to her arrest for importing methamphetamine, and currently is in the possession of the Office of the Special Agent in Charge ("SAC"), Homeland Security Investigations ("HSI"), at 880 Front St, San Diego, California 92101.

2. I seek authority to search the **Target Phones 1** and **2** for evidence of illegal activity, described more fully in Attachment B (incorporated herein by reference), from June 17, 2017 through March 13, 2018, of violations of 21 U.S.C. §§ 841, 846, 952, 960, and 963.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for search warrants, it does not set forth every fact that others or I have learned during the course of this investigation. Dates, times and amounts are approximate.

## EXPERIENCE AND TRAINING

4. I am a Special Agent employed by the U.S. Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I have been employed as an HSI SA since October 2001 (previously named United States Customs Service Special Agent). Currently, I am assigned to the field office in San Diego, California. I am a graduate of the Federal Law Enforcement Training Center ("FLETC").

5. I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, and thereby authorized to request issuance of federal search and seizure warrants. I am empowered to conduct investigations of, and to make arrests for, federal offenses. I have been cross-designated by the Drug Enforcement Administration ("DEA") to conduct investigations and make arrests based on violations of Title 21 of the United States Code.

6. As an HSI SA, my primary duties include the investigation of narcotics-related violations of Title 21 of the United States Code. I investigate violations of the United States Code, including drug trafficking offenses, that stem from the International border between Mexico and the United States. I have participated in investigating various drug trafficking organizations that are involved in the acquisition, importation, transportation, and distribution of controlled substances into and through the Southern District of California. I have spoken with other agents with extensive experience in narcotics trafficking investigations.

7. I have arrested or participated in the arrest of numerous persons for violations of the Controlled Substances Act. In these cases, I have conducted interviews with the arrested persons and their associates, as well as cooperating individuals and informants. I have conducted surveillance of narcotics traffickers while operating inside the United States. I have executed search warrants on cellular phones used by narcotics traffickers in furtherance of their trafficking activities. Through these investigative activities, I have

gained a working knowledge and insight into the typical activity of narcotics traffickers, and the structure of their narcotics trafficking networks. I also have gained information as to the normal operational habits of persons who make their living as narcotics traffickers.

8. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for drug smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involved in the smuggling and trafficking of drugs generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators. For example, load drivers smuggling controlled substances across the border typically are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance. I also know that narcotics traffickers often use fraudulent information to subscribe to communication facilities, especially cellular telephones, and frequently change communications facilities to thwart law enforcement efforts to intercept their communications.

9. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

10. Based upon my training and experience and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers and traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, voice

3

        messages and social media apps such as Facebook or WhatsApp.

    b.   Drug smugglers and traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c.   Drug smugglers, drug traffickers, and their accomplices will use cellular/mobile telephones because they easily may arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    d.   Drug smugglers and traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    e.   Drug smugglers and traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

    f.   Drug smugglers, drug traffickers, and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

    g.   "SIM" (subscriber identify module or subscriber identification module) or memory cards store identification and contact information of subscribers. They may be transferrable between different cellular/mobile telephones. Drug smugglers, drug traffickers, and their co-conspirators will replace the SIM (memory) cards in their cellular or mobile phones as a means to avoid detection.

11.   Based upon my training and experience, consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones and SIM cards can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This

4

information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephones.

## FACTS SUPPORTING PROBABLE CAUSE

12. According to a report prepared by Customs and Border Protection ("CBP") Officer Mitchell Ruiz, on March 13, 2018 at approximately 3:43 p.m., MONTES applied for entry into the United States from Mexico via the San Ysidro, California Port of Entry. MONTES was the driver, and sole occupant of a GMC Sierra truck with California license plate 5T23359 (the "load truck"). MONTES provided two negative customs declarations. She said that she was on her way to Riverside, California. Officer Ruiz entered MONTES's information into the computer database and received a computer-generated alert. The alert was due to MONTES being previously denied as a purchaser of a firearm. Officer Ruiz then referred MONTES to the secondary area for further inspection.

13. According to a report prepared by CBP Officer Steven Jansen, while in the secondary inspection area, Officer Jansen had his narcotic detector dog, "Clint," screen the car. Clint alerted to an amplifier located under the rear passenger side seat.

14. According to a report prepared by CBP Larry Park, Officer Park then inspected the truck. He was informed that "Clint" alerted to amplifiers in the back seat of the truck. He performed a 7-point inspection of the truck. He also opened the amplifiers and found a package concealed in each amplifier. He also seized two cell phones – **Target Phones 1** and **2** – as part of his inspection. Specifically, he seized **Target Phones 1** and **2** from MONTES and turned them over to me for storage.

15. According to a report prepared by CBP Officer J. Van Gundy, Officer Van Gundy probed one of the packages. The substance tested positive for methamphetamine. The total weight was 4.12 kilograms.

16. On March 14, 2018 at approximately 1:30 a.m., while I was inspecting the load truck, I found some other items in the truck. I located another amplifier under the front passenger seat. I noticed the amplifier had shiny screws. I also located a Philips head screw driver in the glove box of the load truck. I took the amplifier and the screw driver

5

to the Seized Contraband Coordinators Office at the port of entry. There, I used the Philips head screw driver to remove the screws from the amplifier. On opening the amplifier, I discovered a black package wrapped in a black plastic bag. I cut a hole in the bag and found a white crystal-like substance. I field-tested the substance. The substance tested positive for methamphetamine. The package weighed approximately 1.56 kilograms. I turned the methamphetamine and the amplifier over to the seizure officer.

17. The methamphetamine seized from the load truck was tested by the Drug Enforcement Administration's Southwest Laboratory. According to the DEA report, the amount came to approximately 5.444 kilograms of actual methamphetamine.

18. MONTES was placed under arrest for importation of methamphetamine, in violation of 21 U.S.C. § 952, 960. On April 12, 2018, MONTES waived Indictment and pled not guilty to an Information, charging her with importation of methamphetamine, in violation 21 U.S.C. § 952, 960.

19. Approximately four to five hours after MONTES's arrest, I interviewed her. After routine questioning, I advised MONTES that I would review her rights before we discussed the events from that day. At that point, MONTES said words to the effect that she "would like to shut the fuck up and can I please get my phone call." I then proceeded to read MONTES her constitutional rights per *Miranda*. After advising MONTES of her various rights and confirming that she understood them, I asked MONTES if she wanted to talk to me or not. MONTES made multiple unsolicited statements and asked me various questions. I am aware that MONTES, through her counsel, has moved to suppress her statements based on a supposed *Miranda* violation and claimed her statements were involuntary. Because the district has not issued a ruling on MONTES's motion, I am not including the substance of our conversation in this affidavit and an not relying on any statements by MONTES to support probable cause.

20. According to documents obtained from the California Department of Motor vehicles, the load truck with California license plate number 5T23359 is registered to Mona Aguirre ("Aguirre"). Aguirre shares the same address as MONTES. Aguirre also is one

6

of MONTES' sureties for her bond. Aguirre's rap sheet shows a 2003 diversion case for possession of an (unidentified) controlled substance.

21. According to databases containing crossing history records, between June 16, 2017 and March 13, 2018, the load truck crossed from Mexico into the United States approximately 29 times. During these crossings, Aguirre was not in the load truck. MONTES, however, was in the load truck approximately 23 times during that time period. At times, other individuals were in the load truck such as Marino Curra ("Curra") and Steven Mark Munoz ("Munoz"). Curra crossed in the load truck approximately three times between August 3 and 17, 2017 and has criminal history involving drug trafficking. Munoz crossed in the load truck three times between June 26, 2017 and February 27, 2018 and has law enforcement contacts from 2007 as a juvenile.

22. Based on my training, experience, the location of the drugs, and the manner of concealment, I believe the packages consisted of drugs intended for importation and distribution. Based upon my experience and investigation in this case, I believe that MONTES, as well as other persons yet unknown, were involved in an on-going conspiracy to import and distribute methamphetamine or other controlled substances into various parts of the United States. Based on my experience investigating narcotics smugglers, I also believe that MONTES may have used **Target Phone 1** and/or **2** to coordinate with co-conspirators regarding the importation and distribution of the methamphetamine, and to further this conspiracy both inside and outside of the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of cellular phones and sim cards, which may identify other persons involved in drug trafficking activities.

22. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of MONTES and her co-conspirators, such as telephone numbers,

made and received calls, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the cellular telephones described herein. Moreover, this warrant seeks data from **Target Phones 1** and **2** for the period of June 16, 2017 (when MONTES crossed in the load truck) through March 13, 2018 (the date of MONTES' arrest.)

## **METHODOLOGY**

23. It is not possible to determine, merely by knowing the cellular/mobile telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular/mobile devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular/mobile service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular/mobile telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular/mobile telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24. Following the issuance of this warrant, I will collect **Target Phones 1** and **2** and subject it to analysis. All forensic analysis of the data contained within the telephones

8

and the memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

26. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude MONTES used **Target Phones 1** and **2** to facilitate the offense of importing methamphetamine or another controlled substance. **Target Phones 1** and **2** were likely to be used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of 21 U.S.C. §§841, 846, 952, 960 and 963. I also believe that probable cause exists to believe that evidence of illegal activity committed by MONTES continues to exist on **Target Phones 1** and **2** as described in Attachments A-1 and A-2, respectively, because the phones have been stored in a secure location. Therefore, I respectfully request that the Court issue these warrants.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Victor Estebanes
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this ___8th___ day of August, 2018.

_____
The Honorable Jill L. Burkhardt
United States Magistrate Judge

9

## ATTACHMENT A-1

PROPERTY TO BE SEARCHED

### Target Phone 1

One ALCATEL Phone
Model 5049Z
FCC ID: 2ACCJB089
IMEI: 014940001680462

Currently in the possession of Office of the Special Agent in Charge (SAC), Homeland Security Investigations (HSI), at 880 Front Street, San Diego, California 92101.

## ATTACHMENT A-2

PROPERTY TO BE SEARCHED

### Target Phone 2

One SAMSUNG Phone
Model SM-J727T
FCC ID: A3LSMJ727T
IMEI: 354804/09/164091/9

Currently in the possession of Office of the Special Agent in Charge (SAC), Homeland Security Investigations (HSI), at 880 Front Street, San Diego, California 92101.

## ATTACHMENT B
ITEMS TO BE SEIZED

Authorization to search **Target Phones 1** and **2** includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in **Target Phones 1** and **2** for evidence described below. The seizure and search of **Target Phones 1** and **2**, and will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from **Target Phones 1** and **2** will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data for the period of June 16, 2018 to March 13, 2018,

a. tending to identify attempts to import methamphetamine or some other controlled substance from Mexico into the United States, or distribute methamphetamine or some other controlled substance within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other controlled substance from Mexico into the United States, or possession with the intent to distribute methamphetamine or some other controlled substance within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine or some other controlled substance from Mexico into the United States, or possession with the intent to distribute methamphetamine or some other controlled substance within the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other controlled substance from Mexico into the United States, or possession with the intent to distribute

       methamphetamine or some other controlled substance within the United States, such as stash houses, load houses, or delivery points;

  e.    tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

  f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 841, 846, 952, 960, and 963.